Maria RAMIREZ, Petitioner,

v.

IMMIGRATION & NATURALIZATION
SERVICE, Respondent.

No. 76–2113.

United States Court of Appeals,
Ninth Circuit.

March 25, 1977.

Before ELY, CHOY and SNEED, Circuit Judges.

SNEED, Circuit Judge:

Petitioner seeks review by this Court of an order of deportation and a denial of her application for voluntary departure. We affirm.

Petitioner, a citizen and native of Guatemala, paid $250 to be smuggled into the United States. She made her illegal entry near San Ysidro, California, in September 1974, without being inspected or admitted by an immigration officer. Petitioner was arrested by immigration officials on September 5, 1975, and an Order to Show Cause was issued, charging her with deportability under section 241(a)(2) of the Immigration and Nationality Act [8 U.S.C. § 1251(a)(2) (1970)], as having entered the United States without inspection. Petitioner gave her maiden name and stated that she was single when interviewed by the immigration investigator, although she was in fact married and her husband was also the subject of deportation proceedings.

A deportation hearing was held October 22, 1975, at which time petitioner again gave only her maiden name. Petitioner did not appear with counsel at this hearing although a notice of appearance had been filed by an attorney. Petitioner was accompanied by a Stephen Hollopeter, not an attorney, and was advised off the record by the immigration judge that Hollopeter was not qualified to represent her under the current agency regulations. Petitioner was informed that she had the right to be represented by counsel of her choice, qualified to appear at immigration proceedings, at no expense to the Government. She replied that she did not have the money to retain counsel but was willing to proceed without counsel. The immigration judge thereupon provided petitioner with a list of organiza-

Antonio H. Rodriguez, submitted on briefs, Eiden, Rodriguez & Silbiger, Los Angeles, Cal., for petitioner.

William D. Keller, U.S. Atty., submitted on briefs, Los Angeles, Cal., Brian H. Simpson, Trial Atty., I&NS, San Francisco, Cal., Richard Thornburgh, Asst. Atty. Gen., Crim. Div., Dept. of Justice, Washington, D.C., Bernard S. Karmiol, Regional Counsel, I&NS, San Pedro, Cal., Bernard J. Hornbach, District Director, I&NS, Los Angeles, Cal., for respondent.

tions which might represent her without charge and adjourned the hearing until October 30, 1975, in order to allow her to arrange for proper representation.

At the second hearing, petitioner again appeared without counsel and accompanied by Hollopeter. She explained that she had not been able to secure counsel without charge, although she failed to contact at least two of the organizations referred to her by the immigration judge. She further indicated that she desired to be represented only by Hollopeter because he had attempted to represent her husband in deportation proceedings and because "he has defended other cases, and I know that he can." (Record at 18.) The immigration judge ruled that Hollopeter was not qualified to represent others in deportation proceedings and ordered that the hearing proceed without counsel inasmuch as petitioner was apparently unwilling to be represented by anyone other than Hollopeter.

During the course of this hearing petitioner admitted the truth of all the allegations of fact contained in the Order to Show Cause and was found deportable as charged. The immigration judge refused her the privilege of voluntary departure because she had deliberately tried to avoid the immigration laws and had made intentional misrepresentations to the immigration investigator. The Board of Immigration Appeals affirmed the decision of the immigration judge and dismissed petitioner's appeal. Petitioner timely filed this Petition for Review and this court has jurisdiction by 8 U.S.C. § 1105a (1970).

Petitioner contends that she was denied her due process rights under the Fifth Amendment when the immigration judge refused to allow her to be represented by Hollopeter. This contention rests on alternative assertions, *viz.* either that the Fifth Amendment permits her to be represented by anyone of her choice at deportation proceedings, or that Hollopeter was a qualified representative under the applicable regulations and the refusal to permit him to represent the petitioner was an abuse of discretion. This denial of her due process rights entitles her to a new hearing, the petitioner insists, without regard to whether harmful error exists. However, should harmful error be a prerequisite to relief she insists that she was prejudiced by not being informed of her right to remain silent, by some remarks at the hearing not being translated, and by not being prepared to present the equities favoring the granting of voluntary departure.

The majority hold the petitioner was not deprived of her due process rights under the Fifth Amendment. The Amendment does not permit the petitioner to be represented by anyone of her choice and Hollopeter was not qualified under the applicable regulations to represent the petitioner. We further hold that the petitioner received a full and fair hearing and was not denied due process because of the absence of counsel. The petitioner, thus, is not entitled to a new hearing. Finally, the majority hold that the denial of voluntary departure was not an abuse of discretion.

I.

*Right to Counsel In Deportation Proceedings.*

The rules prescribing who may represent another in deportation proceedings are presently covered by 8 C.F.R. § 292.1 (amended 1975).[1] Under these rules representation may be by an attorney or, subject

---

1. 8 C.F.R. § 292.1. Representation of others.
   (a) A person entitled to representation may be represented by any of the following:
   (1) *Attorneys in the United States.* Any attorney as defined in § 1.1(f) of this chapter.
   (2) *Law students and law graduates not yet admitted to the bar.* A law student who is enrolled in the final year of an accredited law school or a law school graduate who is not yet admitted to the bar, provided that:

   (i) He is appearing on an individual case basis, at the request of the person entitled to representation;
   (ii) In the case of a law student, he has filed a statement that he is participating, under the direct supervision of a faculty member or an attorney, in a legal aid program or clinic conducted by the law school, and that he is appearing without direct or indirect remuneration; and

to certain restrictions, a law student, a law graduate, or a "reputable individual." One of the restrictions applicable to all, other than attorneys, is that "his appearance is permitted by the official before whom he wishes to appear." 8 C.F.R. § 292.- 1(a)(2)(iii), (3)(iv). The issue before us is whether these rules insofar as they deprive the petitioner of the power to be represented by anyone of her choice contravene the Fifth Amendment.

We begin by repeating once more that a deportation hearing is a proceeding that is civil, not criminal, in nature. *Trias-Hernandez v. I&NS*, 528 F.2d 366, 368 (9th Cir. 1975). *See Woodby v. I&NS, 385 U.S. 276, 87 S.Ct. 482, 17 L.Ed.2d 362 (1966); Harisiades v. Shaughnessey*, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952); *Ah Chiu Pang v. I&NS*, 368 F.2d 637 (3rd Cir. 1966). Constitutional due process requirements under the Fifth Amendment are satisfied by a full and fair hearing. *Cf. Antolos v. I&NS*, 402 F.2d 463 (9th Cir. 1968). The Sixth Amendment's guarantee of the right to counsel is not applicable to deportation proceedings. *Martin-Mendoza v. I&NS*, 499 F.2d 918 (9th Cir. 1974); *Murgia-Melendrez v. I&NS*, 407 F.2d 207 (9th Cir. 1969). Mr. Justice Brandeis, in an opinion concerned with whether a deportation proceeding conformed to the Fifth Amendment, observed:

> "To render a hearing unfair the defect, or practice complained of, must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process."

*Bilokumsky v. Tod*, 263 U.S. 149, 157, 44 S.Ct. 54, 57, 68 L.Ed. 221 (1923).

The rules prescribing representation set forth in 8 C.F.R. § 292.1 do not render a hearing unfair under this standard. Vesting authority in the "official before whom [the representative] wishes to appear" to grant or deny permission to appear to one not an attorney is consistent with the need of the Service to ensure that those who appear are responsible and not likely to abuse its processes. It is reasonable to assume that attorneys, each of whom is subject to professional discipline, meet these requirements. Such an assumption cannot be made with respect to anyone the alien might choose. Screening prior to granting permission to appear is reasonable and sound administrative practice. The same can be said for the Attorney General delegating the authority to screen to the official before whom the non-attorney will appear. These rules do not contravene the Fifth Amendment.

They are, moreover, consistent with the governing statutes which are 8 U.S.C. §§ 1103 and 1362 (1970). In finding such consistency we are mindful that the Supreme Court places a heavy burden on those who would overturn an administrative regulation.

(iii) His appearance is permitted by the official before whom he wishes to appear (namely a special inquiry officer, district director, officer-in-charge, regional commissioner, the Commissioner, or the Board), which official, if in his opinion special circumstances warrant it, may require that a law student be accompanied by the supervising faculty member or attorney.

(3) *Reputable individuals.* Any reputable individual of good moral character, provided that:

(i) He is appearing on an individual case basis, at the request of the person entitled to representation;

(ii) He is appearing without direct or indirect remuneration and files a written declaration to that effect;

(iii) He has a pre-existing relationship or connection with the person entitled to representation (e. g., as a relative, neighbor, clergy-

man, business associate or personal friend), provided that such requirement may be waived, as a matter of administrative discretion, in cases where adequate representation would not otherwise be available; and

(iv) His appearance is permitted by the official before whom he wishes to appear (namely, a special inquiry officer, district director, officer-in-charge, regional commissioner, the Commissioner, or the Board), provided that such permission shall not be granted with respect to any individual who regularly engages in immigration and naturalization practice or preparation, or holds himself out to the public as qualified to do so.

(4) *Accredited representatives.* A person representing an organization described in § 292.2 of this chapter who has been accredited by the Board.

"A regulation . . . should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law. Those who insist that such a regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress." *Boske v. Comingore*, 177 U.S. 459, 470, 20 S.Ct. 701, 706, 44 L.Ed. 846 (1900), *followed in Carter v. Forrestal*, 85 U.S.App.D.C. 53, 175 F.2d 364 (1949), and *Cermeno-Cerna v. Farrell*, 291 F.Supp. 521 (C.D.Cal.1968).

No such palpable inconsistency exists in this instance. The Attorney General under 8 U.S.C. § 1103(a) is charged with the administration and enforcement of all immigration laws and is authorized to promulgate all regulations necessary for carrying out this authority. The right to counsel at deportation proceedings is governed by 8 U.S.C. § 1362[2] which provides as follows:

In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

This statute unmistakably limits the alien's choice of counsel to those "authorized to practice in such proceedings." Those so authorized are described in 8 C.F.R. § 292.1, a regulation promulgated under the authority of 8 U.S.C. § 1103(a). We hold that 8 C.F.R. § 292.1 is a valid exercise of this administrative rule-making authority.

## II.

### *Hollopeter Not Qualified To Represent Petitioner.*

Hollopeter fits into none of the categories of persons entitled to represent aliens under 8 C.F.R. § 292.1. He is neither an attorney, although he did graduate from law school, nor an accredited representative of an accredited organization. He could only qualify as a "law graduate not yet admitted to the bar" or as a "reputable individual." 8 C.F.R. § 292.1(a)(2) and (3). However, to do so the law graduate must appear "on an individual case basis" with the permission of the immigration judge, and the "reputable individual" must have a "pre-existing relationship" with the alien, not have regularly engaged in immigration practice (or held himself out as qualified to do so) and obtain the permission of the immigration judge. *Ibid.* Hollopeter failed to obtain the required permission; thus, he qualified under neither heading.

■ The withholding of this permission was neither arbitrary nor capricious. Under such circumstances, we cannot disturb the action of the immigration judge. *See Cubillos-Gonzalez v. I&NS*, 352 F.2d 782 (9th Cir. 1965); *Murillo-Aguilera v. Rosenberg*, 351 F.2d 289 (9th Cir. 1965); *Ocon v. Guercio*, 237 F.2d 177 (9th Cir. 1956). It is obvious that the philosophy of 8 C.F.R. § 292.1 is to restrict representation of aliens by non-attorneys to instances in which either a pre-existing relationship with the alien exists or the non-attorney is accountable to a responsible organization. As we have already indicated, such an approach is reasonable. Moreover, our review of the record convinces us that the immigration judge could well conclude, on the basis of his finding that the relationship between the petitioner and Hollopeter was "based solely on Mr. Holopeter's [sic] activities as a representative of aliens in deportation proceedings," (R. at 9), that Hollopeter did seek to represent aliens more or less regularly and not on "an individual case basis." Under these circumstances, the refusal by the immigration judge to qualify Hollopeter to represent the petitioner will not be set aside.

---

**2.** A similar provision is contained in 8 U.S.C. § 1252(b) (1970).

## III.

### *Hearing Not Unfair Because of Absence of Counsel.*

It is well established that an alien can knowingly, intelligently, and voluntarily waive his right to counsel. *Barthold v. I&NS*, 517 F.2d 689 (5th Cir. 1975); *Cruz Burquez v. I&NS*, 513 F.2d 751 (10th Cir. 1975); *Tupacyupanqui-Marin v. I&NS*, 447 F.2d 603 (7th Cir. 1971); *Velasquez Espinosa v. I&NS*, 404 F.2d 544 (9th Cir. 1968). The record here supports the finding of such a waiver. The immigration judge did all he could to allow petitioner an opportunity to obtain acceptable counsel.[3] Petitioner was informed of her right to counsel and understood the nature of the proceedings against her.[4] Despite the fact that petitioner agreed to proceed with the first hearing without counsel, the judge continued the hearing for eight days and provided the petitioner with the names of organizations willing to provide counsel without charge. Instead of returning with counsel from one such organization when the hearing resumed, petitioner again brought Hollopeter, although she knew he was unacceptable to the immigration judge, and indicated that only he could represent her. It is obvious that petitioner was more interested in testing the refusal to qualify Hollopeter than in obtaining counsel for herself. This amounts to a valid waiver of the right to counsel. This court has held that under circumstances similar to these a hearing without counsel is fair. *See Bisaillon v. Hogan*, 257 F.2d 435 (9th Cir. 1958). With respect to petitioner's claims of prejudice resulting from the absence of counsel, the short answer is that the waiver of counsel eliminates any basis for complaint. Even if that were not so, which it is, we find no basis exists for petitioner's argument that her privilege against self-incrimination was impaired.[5] The statements of the petitioner upon which the immigration judge relied either were made under no compulsion or prior to the deportation hearing at which the right of counsel came into being.

3. The following colloquy occurred between the immigration judge and petitioner at the first hearing (Record at 13–14):

JUDGE: "This is a hearing in deportation proceedings for the purpose of determining whether or not you are deportable from the United States, do you understand?"

RAMIREZ: "Yes."

JUDGE: "During this proceeding you have the right to be represented by counsel of your choice at no expense to the Government. Have you retained counsel to present [sic] you at this hearing?"

RAMIREZ: "No."

JUDGE: "Are you willing to proceed with the hearing at this time without counsel?"

RAMIREZ: "Yes."

JUDGE: "Ms. Suy [petitioner's maiden name], I'd like to make this clear . . .. I want it understood clearly whether or not you are willing to proceed with the hearing at this point without being represented or whether you desire to obtain representation? . . . [D]o you desire to obtain another attorney or other person authorized to represent you in these proceedings in representing you at this hearing?"

RAMIREZ: "Your Honor, I don't have a lawyer because I don't have the money. I am not working."

JUDGE: "I would assume from your answer that you desire to be represented and the reason you weren't represented is because you can't afford to retain counsel. I hand you herein a sheet containing the names of organizations which may be willing to represent you without fee. Do you desire to be given adjournment for the purpose of arranging to be represented in this proceedings [sic]?"

RAMIREZ: "Yes, your honor."

4. The immigration judge included in his oral decision his assessment of petitioner's grasp of the situation: "Before me [Mrs. Ramirez] indicated no evidence of nervousness and appeared to know exactly what she is doing and what she proposed to do." (Record at 10.) We find no reason to quarrel with his judgment.

5. Similarly, our examination of the record convinces us that petitioner did not suffer any denial of due process by her other claims of prejudice. The immigration judge questioned petitioner extensively relative to the application for voluntary departure, and had before him all the facts petitioner claims he overlooked. The alleged gaps in translation were likewise insufficient to render the hearing unfair. *See Strantzalis v. I&NS*, 465 F.2d 1016, 1018 (3d Cir. 1972).

## IV.

*Denial of Voluntary Departure
Not Arbitrary.*

■ The immigration judge based his denial of discretionary relief on petitioner's deliberate attempts at avoidance of the immigration laws. This was evidenced by her payment of $250 to be smuggled into the United States and her intentional misrepresentations of her name and marital status both to the immigration investigator at the initial interview and to himself at the deportation hearings. Denials of voluntary departure have been found to be justified because of the alien's efforts to avoid detection through false statements to immigration officials. *See Strantzalis v. I&NS*, 465 F.2d 1016 (3d Cir. 1972); *Gonzalez-Jiminez v. Del Guercio*, 253 F.2d 420 (9th Cir. 1958). Therefore, the majority find the immigration judge's denial of voluntary departure here not to be an abuse of discretion.

AFFIRMED.

ELY, Circuit Judge, would remand the cause to the Respondent, with directions that the Petitioner be allowed voluntary departure.