107 F.3d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Marcos DUARTE-PERLA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70392.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1996.
Decided Feb. 7, 1997.
 
 1
 Before: FLETCHER and FERGUSON, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Marcos Duarte-Perla ("Duarte-Perla"), a native and citizen of El Salvador, petitions this Court for review of an order by the Board of Immigration Appeals ("BIA"), denying his request for asylum and withholding of deportation, based on the BIA's adverse credibility finding. We find that the BIA's credibility determination is supported by substantial evidence in the record and affirm.
 
 
 4
 On April 11, 1994, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause, charging Duarte-Perla with deportability for entering the United States without inspection, 8 U.S.C. § 1251(a)(1)(B), and with conviction of possession of a controlled substance,[1] 8 U.S.C. § 1251(a)(2)(B)(i). At his deportation hearing, Duarte-Perla admitted his deportability and requested asylum and withholding of deportation. The Immigration Judge ("IJ") denied his request finding that because Duarte-Perla's testimony was unbelievable, he failed to meet his burden of establishing a well-founded fear of persecution in El Salvador. The BIA affirmed the IJ's determination.
 
 
 5
 This Court must uphold the BIA's denial of asylum if it is supported by reasonable, substantial, and probative evidence in the record. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).
 
 
 6
 The Attorney General has the discretion to grant an alien physically present in the United States asylum if the Attorney General determines that the alien is a refugee. 8 U.S.C. § 1158(a). A refugee is a person who is outside his or her country of nationality and who is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden is on the alien to prove past persecution or a well-founded fear of persecution based on one of the statutory grounds. Ghaly v. INS, 58 F.3d 1425, 1428-29 (9th Cir.1995).
 
 
 7
 The well-founded fear standard includes both a subjective and an objective component. Id. at 1428. "The subjective component requires that the applicant have a genuine concern that he will be persecuted," Aguilera-Cota v. INS, 914 F.2d 1375, 1378 (9th Cir.1990), and may be satisfied by the applicant's testimony that he genuinely fears persecution. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The objective component requires that the alien establish a reasonable fear of persecution on a relevant ground by credible, direct and specific evidence. Prasad v. INS, 47 F.3d 336, 338 (9th Cir.1995). Documentary evidence establishing past persecution or the threat of future persecution is usually sufficient to satisfy this component. When documentary evidence is not available, the asylum applicant's credible, persuasive and specific testimony will suffice. Aguilera-Cota, 914 F.2d at 1379. Credibility determinations are reviewed for substantial evidence. Vilorio-Lopez v. INS, 852 F.2d 1137 (9th Cir.1992). We defer to adverse credibility determinations that are supported by specific and cogent reasons, if there is a rational and supportable connection between the reasons and the adverse credibility finding. Paredes-Urrestarazu v. INS, 36 F.3d 801, 817 (9th Cir.1994).
 
 
 8
 Duarte-Perla argues that the BIA's adverse credibility finding is not supported by the record. In affirming the decision of the IJ, the BIA noted that the IJ found Duarte-Perla's testimony "riddled with inconsistencies" and therefore had given it little weight. Several of these inconsistencies are related to Duarte-Perla's involvement with the guerrillas, and therefore, relate directly to his reason for seeking asylum.
 
 
 9
 Specifically, the BIA found that in his asylum application, Duarte-Perla indicated that he was forced to join the guerrillas upon threats of death, but made no such contention at the merits hearing. The record supports this finding, and reveals that when asked why he joined the guerrillas, Duarte-Perla responded:
 
 
 10
 Well, it was like playing cowboys. I got into a group of young, of men and they were telling me how the government was playing us false. And so later we'll get into discussions. We would read books and about communism and later they started to show us how to disassemble arms, all that kind of stuff.
 
 
 11
 Another significant inconsistency between Duarte-Perla's asylum application and his hearing testimony involved the circumstances of his brother's death. The BIA explained that on his asylum application, Duarte-Perla indicated that his brother had been killed by the National Guard, but later testified that it could have been the guerrillas. As explanation for this inconsistency in his appeal to the BIA, Duarte-Perla argued that because his brother had been involved with the guerrillas, it was reasonable to assume that he had been killed by them. However, the BIA pointed out that when asked if his brother was a member of the guerrillas at the deportation hearing, Duarte-Perla had replied that his brother was a Jehovah's Witness and not a member of the guerrillas.
 
 
 12
 Other inconsistencies noted by the BIA included Duarte-Perla's denial that he had previously filed an asylum application despite the production of a 1981 application, and his statement on the 1981 application that he sought asylum because he had friends who were guerrillas, not because of his own involvement. At his deportation hearing, Duarte-Perla claimed to have been a guerrilla and testified that his main reason for seeking asylum was fear of retribution for his involvement in the assassination of nine Death Squad members.
 
 
 13
 Contrary to Duarte-Perla's contention, these inconsistencies do not relate to "collateral or insignificant matters," but rather, bear directly on his claim of fear of persecution. In addition, the record reveals other inconsistencies, some of which were noted by the IJ, which do not bear directly on Duarte-Perla's claim of fear of persecution, but which add support to the BIA's adverse credibility finding.[2]
 
 
 14
 The IJ found, and the BIA agreed, that Duarte-Perla's testimony was not credible and therefore gave it little weight. In so doing, both gave specific reasons which are supported by the record, and which relate directly to Duarte-Perla's claim of fear of persecution based on his involvement with the guerrillas in El Salvador. Absent the testimony of Duarte-Perla, the record is devoid of any evidence which directly relates to Duarte-Perla's claim of fear of persecution, and therefore, the IJ correctly denied his applications for asylum and withholding of deportation.[3]
 
 
 15
 Additionally, Duarte-Perla argues that he is entitled to a new deportation hearing because his waiver of counsel was not "knowingly and understandingly made." The Immigration and Nationality Act ("INA") gives aliens the right to be represented by counsel of their choice at deportation hearings at no cost to the government. 8 U.S.C. § 1252(b)(2). Pursuant to the INA, federal regulations require immigration judges to notify aliens of their right to counsel at no expense to the government, advise the alien of free legal services available in the district where the deportation hearing is held, and determine whether the alien has received the list and whether the alien desires representation. Acewicz v. INS, 984 F.2d 1056, 1062 (9th Cir.1992). However, violation of these provisions will only invalidate a deportation proceeding if the alien's interests are prejudiced. Id. Prejudice is present when counsel "could have better marshaled specific facts or arguments in presenting petitioner's case for asylum or withholding of deportation." Id. (citation omitted).
 
 
 16
 At Duarte-Perla's deportation hearing, the IJ complied with the mandates of the federal INA regulations. He advised Duarte-Perla that he had the right to an attorney, but that none would be appointed for him. He also provided Duarte-Perla with a list of agencies providing free or reduced cost immigration services. When asked if he would like to speak with an attorney, Duarte-Perla replied that he had spoken with one agency that would not take his case because he had a prior felony conviction, but that he had asked the Florence Asylum Project for help. The IJ also asked Duarte-Perla if he understood that he had the right to an attorney, and Duarte-Perla responded "yes."
 
 
 17
 The IJ then offered to give Duarte-Perla more time to consult with an attorney, but Duarte-Perla declined, stating that he felt he did not need one because he had already spoken with a legal advisor who had helped to put him in a position where he could tell the truth in his case. Thus, Duarte-Perla was apprised of his right to representation but chose to proceed without counsel. He did not indicate, prior to this appeal, that he had difficulty locating an attorney, or that the list of legal services was inadequate. Acewicz, 984 F.2d at 1062.
 
 
 18
 In addition to the statutory right to counsel, this Court has held that aliens have a due process right to obtain counsel of their choice at their own expense. Id.; Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 554 (9th Cir.1990). The record indicates that Duarte-Perla was aware of his right to counsel and waived his right voluntarily, knowingly, and intelligently. The record does not reflect that his due process rights were violated. Ramirez v. INS, 550 F.2d 560, 565 (9th Cir.1977).
 
 
 19
 The IJ's finding that Duarte-Perla was not credible is supported by the record in this case, therefore, the IJ was correct in affording his testimony little weight. Without his own testimony, Duarte-Perla cannot establish entitlement to asylum or withholding of deportation. In addition, Duarte-Perla was informed of his right to counsel, but chose to proceed without the aid of counsel. The record indicates that this waiver was knowing and voluntary.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Duarte-Perla pled guilty to possession of more than one pound but less than eight pounds of marijuana before the Superior Court of Maricopa County, Arizona, on January 6, 1994. Appellant received a suspended sentence and three years probation
 
 
 [2]
 These include Duarte-Perla's claim that he did not return to El Salvador after his deportation from the United States in 1979 because he escaped at the Mexico City airport, despite the fact that the itinerary from this flight shows a layover in Guatemala, not Mexico City; Duarte-Perla's denial that he was deported again in 1982, despite evidence to the contrary (Record of Deportable Alien); Duarte-Perla's contradictory statement at the deportation hearing that he was arrested in 1968 for fighting with his wife, when his asylum application indicated this incident occurred in 1980, and Duarte-Perla would have been 10 years old in 1968
 
 
 [3]
 A request for asylum in deportation proceedings is automatically considered to include a request for withholding of deportation. INS v. Stevic, 467 U.S. 407, 420 n. 13 (1984). Withholding of deportation is mandatory if an alien's life or freedom would be threatened because of the alien's race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1253(h)(1). To obtain withholding of deportation, the alien must establish a clear probability of persecution by the government or a group the government cannot control based on one of these grounds. Mendoza Perez v. INS, 902 F.2d 760 (9th Cir.1990). Although the standard for establishing withholding of deportation is higher than that for asylum, INS v. Cardoza-Fonseca, 480 U.S. 421, 449-50 (1987), like asylum, the burden may be met by the applicant's testimony alone if it is credible and unrefuted. Bolanos-Hernandez v. INS, 767 F.2d 1277, 1285 (9th Cir.1985)